UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM FORDHAM III,

      Plaintiff,

      v.

CITY OF DETROIT, RAMIZ
ATTO, and PHILLIP TILLISON,

      Defendants.

_____/

Case No. 20-13319

Hon. George Caram Steeh

OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (ECF NO. 28)

Plaintiff William Fordham alleges that City of Detroit police officers

Ramiz Atto and Phillip Tillison used excessive force against him when

responding to a domestic incident at his home. Defendants seek summary

judgment on all of Plaintiff's claims. For the reasons explained below,

Defendants' motion is granted in part and denied in part.

BACKGROUND FACTS

On the night of November 6, 2019, Fordham, then forty-one years

old, called 911 after arguing with his seventy-three-year-old mother.

Fordham had recently undergone surgery on his left eye and was

supposed to limit his activities and keep his head down. He had been

drinking, at least a pint of vodka and a beer. ECF No. 31-2 at PageID 407.

When Officers Atto and Tillison arrived, Plaintiff greeted them at the door.[1] He was shirtless and wore glasses and a medical discharge bracelet. He began to tell the officers that his mother had attacked him, appearing to slur his words, and tried to show them his medical discharge papers. The officers asked him to step into the house, which Plaintiff did. He entered the living room, which was dimly lit. Plaintiff sat on the living room couch and the officers asked him to describe what happened. Plaintiff again stated that his mother attacked him and attempted to show the officers his medical papers. When asked why he was doing so, Plaintiff shrugged and said that "of course y'all going to believe the female." When Officer Tillison stated that the papers did not help him understand the situation, Plaintiff became agitated. He stood up, took off his glasses, stepped towards the officers, and waved his hand around, shouting about his eye.

As Plaintiff turned toward Officer Atto, the officer pushed him and he fell back on the couch. Defendants allege that Atto pushed him in the chest, whereas Plaintiff alleges that Atto punched him in the face. Officer Tillison's body camera footage makes clear, however, that Atto pushed Plaintiff in

---

[1] The incident was video recorded on the officers' body cameras.

the chest with two hands. Defs.' Ex. C. Atto then pulled Plaintiff off the couch, took him to the ground and handcuffed him. Plaintiff alleges that the officers slammed his head into a wall as they escorted him out of the house. The video does not show Plaintiff being slammed against a wall, nor is there a sound consistent with such force present on the audio. During the time Plaintiff is being handcuffed and escorted from the house, he engages in a tirade against the officers, but does not mention being slammed against the wall. At his deposition, however, Plaintiff testified that they "rammed" his head into the wall. ECF No. 31-2 at PageID 407.

Plaintiff was transported to Detroit Receiving Hospital, where records reflect that he had abrasions under his left eye. He reported to medical staff that the police pushed him up against a wall and that he was unable to see out of his left eye. Later that day, he went to Sinai Grace Hospital, complaining of eye pain and decreased vision. No charges were brought against Plaintiff as a result of his altercation with the officers.

Plaintiff's complaint alleges a violation of his Fourth Amendment right to be free of excessive force as well as a *Monell* claim against the City of Detroit. Because Plaintiff has abandoned his claim against the City of Detroit in his briefing, the court will consider only his claims against the individual officers.

- 3 -

## LAW AND ANALYSIS

I.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II.   Qualified Immunity

Officers Atto and Tillison argue that they are entitled to qualified

- 4 -

immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

In determining whether a defendant is entitled to qualified immunity, the court inquires as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 201-202.  It is within the court's discretion to determine which prong of this analysis to address first, depending upon the circumstances of the case. *Pearson*, 555 U.S. at 236.

- 5 -

The court will first consider whether Plaintiff has alleged sufficient facts demonstrating a constitutional violation. Plaintiff alleges that Officer Atto punched him, took him to the floor and put a knee in his back while handcuffing him, and that both officers slammed his head into a wall as they escorted him out of the house. Plaintiff argues that these actions amounted to excessive force in violation of the Fourth Amendment. The Fourth Amendment guarantees individuals the right to be free from unreasonable seizures, including the use of excessive force. U.S. Const. Amend. IV; *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). A standard of "objective reasonableness" governs whether an officer has used excessive force. *Thomas*, 854 F.3d at 365 (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

In considering whether an officer has acted reasonably, the court analyzes the totality of the circumstances, "including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Other factors the court may consider include the demeanor of the suspect, the size and stature of the parties involved, and whether the suspect was fighting with the police or "intoxicated and noncompliant." *Davenport v. Causey*, 521 F.3d 544, 551 (6th Cir. 2008). The "extent of the injury inflicted" is not dispositive, but whether an officer subjects a detainee to "gratuitous violence." *Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010).

The court may decide whether an officer acted reasonably as a matter of law, but only if "all material facts are undisputed." *Stricker v. Twp. of Cambridge,* 710 F.3d 350, 364 (6th Cir. 2013). However, "[i]f the video evidence is inconclusive" and the parties dispute material facts, "it would be premature for the district court to make a legal determination as to the excessiveness of the force." *Oliver v. Buckberry*, 687 Fed. Appx. 480, 484 (6th Cir. 2017).

Here, the video is conclusive with respect to some of the alleged facts and inconclusive as to others. Despite Plaintiff's contention that Atto punched him, the video shows that Atto pushed him in the chest/shoulder area. Under the circumstances, the court cannot conclude that this force

was objectively unreasonable. Plaintiff was clearly intoxicated, marginally coherent, and suddenly became agitated and belligerent, approaching the officers and yelling in their faces. A reasonable officer could view Plaintiff as an immediate threat to his safety. Given the small, dark room and Plaintiff's unpredictable behavior, Officer Atto's instinct to create space between them and attempt to bring Plaintiff under control was not unreasonable.

Plaintiff alleges that once he was handcuffed, the officers slammed his head into a wall. In this regard, the video is inconclusive. Although it does not clearly appear that Plaintiff hit the wall, the video is dark due to the poorly lit room and it cannot be said to blatantly contradict Plaintiff's allegation. Accordingly, the court must accept Plaintiff's testimony in this regard.[2] If the officers slammed Plaintiff's head into a wall after he was handcuffed and no longer posed a threat, such gratuitous force would be unreasonable.

Moreover, the right to be free of such gratuitous force is clearly established. "As far back as 1999, this court has held that slamming a compliant, non-resisting suspect into a stationary object during an arrest

---

[2] Although Defendants challenge Plaintiff's credibility, such matters are not appropriately considered on summary judgment.

constitutes excessive force." *Folks v. Petitt*, 676 Fed. Appx. 567, 572 (6th Cir. 2017) (citing *Bass v. Robinson*, 167 F.3d 1041, 1043, 1045-47 (6th Cir. 1999)).

## CONCLUSION

Because material facts are disputed, and Plaintiff's version suggests a violation of a clearly established constitutional right, the court must deny Defendants' motion for summary judgment as to Plaintiff's excessive force claim. The court will grant summary judgment on Plaintiff's claim against the City of Detroit, which Plaintiff has abandoned.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

Dated:  August 23, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 23, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk